UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GENZYME CORPORATION ) ) ) Plaintiff, ) ) v. ) ) ) CZARNOWSKI DISPLAY SERVICE, INC. ) ) Defendant. ) ) | Civil Action No. |

## COMPLAINT AND JURY DEMAND

This is an action by Plaintiff Genzyme Corporation ("Genzyme") against Defendant Czarnowski Display Service, Inc. ("Czarnowski") for breach of contract, breach of good faith, unjust enrichment, and unfair business practices. As a result of Czarnowski's actions, Genzyme has suffered damages in excess of $92,800.

## VENUE, JURISDICTION, PARTIES

1. Plaintiff Genzyme Corporation is a Massachusetts corporation with a principal place of business located at 500 Kendall Street, Cambridge, Massachusetts 02142.

2. Defendant Czarnowski Display Service, Inc. is an Illinois corporation with a principal place of business located at 2287 South Blue Island Avenue, Chicago, Illinois 60608.

3. The Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that this action is between citizens of different states and seeks damages in excess of $75,000.

4.      Venue is proper in this District pursuant to 28 U.S.C. §1391 in that a substantial part of the acts, conduct, and/or omissions occurred in this District and Plaintiff's principal place of business is located in this District.

## FACTUAL BACKGROUND

5.      Genzyme is a biotechnology corporation which is dedicated to the research and development of products and services which serve to improve the lives of patients with illnesses and diseases.

6.      Czarnowksi is engaged in the construction and management of advertisement display booths which are primarily used in tradeshows and other promotional events.

7.      On or about April 22, 2008, Genzyme and Czarnowski entered into a Consulting Agreement ("Agreement") relating to the design and construction of a large, intricate display booth ("Project") which was to be used primarily by Genzyme's Oncology division to help market and promote its products and services in tradeshows across the country.  *See* Agreement, attached as Exhibit 1.  Czarnowski had initially represented the Project would cost Genzyme approximately $616,062.75 and would be shipped no later than December 31, 2008.

8.      Over the next six (6) months, Genzyme's Jill Dennard, a Senior Marketing Specialist in the Oncology division, worked closely with Czarnowski's Mike Malinski, Account Manager, and Michael Cassady, Account Executive, to oversee the timely completion of the Project in accordance with the agreed-upon plans and specifications. However, it soon became apparent to Genzyme that Czarnowski's work was at times sloppy and it was struggling to comply with the timeline included in their proposals.  By

late September 2008, Ms. Dennard was so concerned about Czarnowski's lack of progress in completing a correct design for the Project that she was forced to repeatedly communicate her concerns regarding design regulations and timing to Mr. Malinski and Mr. Cassady and, on several occasions, requested firm assurances the Project would be completed no later than February 1, 2009.

9. Section 3.2 of the Agreement specifically provides that "[a]ll invoices shall become due and payable net forty-five (45) days after Genzyme's receipt of a correct, valid invoice." *Id*. However, as the delivery deadline for the major components for the Project approached, and after Czarnowski was informed that their services would not be required by Genzyme after completion of the Project, Czarnowski suddenly demanded that Genzyme pay for the Project and all outstanding invoices in full prior to shipment. In response, Genzyme protested on the grounds that full payment would prevent Genzyme from inspecting the completed Project before final payment. However, due to the fact Genzyme was facing a strict time deadline, it eventually conceded and paid Czarnowski in full.

10. Contrary to Czarnowski's repeated assurances, the final components of the Project were not shipped to Genzyme until approximately February 24, 2009. Thereafter, as Genzyme began to assemble and inspect the various sections of the display booth, it quickly realized the Project was incomplete and failed to comply with the specifications. Specifically, among other problems, the display booth: (1) did not comply with basic electrical codes, (2) had broken lamps, (3) used incorrect and/or incomplete hardware, fabric and materials; and (4) incorporated improper shipping crates.

11. On or about March 20, 2009, Genzyme contacted Czarnowski to notify them of the deficiencies and provide a detailed breakdown of the items that needed to be repaired and/or replaced. On April 6, 2009, Genzyme provided Czarnowksi with a cost estimate for those items identified on the detailed breakdown ($92,800). In response Czarnowski denied responsibility for any of the problems and offered to fix the deficiencies only if Genzyme paid in advance for such work to be performed.

12. Czarnowski's refusal to correct the deficiencies unless it received additional compensation was contrary to the explicit language of Section 4 of the Agreement which states:

> 4.1 Genzyme will designate an individual who has the responsibility to review and approve each Deliverable identified in the applicable SOW and/or any related Order. Genzyme may reject any Deliverable that is not (a) complete; (b) in material conformance with this Agreement and the specifications set forth in the applicable SOW and/or Order; and/or (c) delivered in the time frame set forth in the applicable SOW and/or Order (a "Deficient Deliverable").
>
> 4.2 In the event that Genzyme rejects a Deliverable as set forth in Section 4.1, Genzyme shall so notify Service Provider, and Service Provider shall correct the deficiencies identified by Genzyme within a mutually agreed upon time period. Service Provider shall bear the entire cost and expense of any such corrections under this Section 4.2.
>
> 4.3 If Service Provider is unable to correct the deficiencies within the designated time period, Genzyme may, at its option, cancel this Agreement and/or a particular SOW or Order without any liability whatsoever (except for payment for Services satisfactorily provided and accepted that are not directly related to the Deficient Deliverable). Genzyme shall incur no payment obligations for any Deliverable unless and until such Deliverable is accepted by Genzyme, except that Genzyme shall pay Service Provider any balance due for previously delivered and accepted Deliverables if such accepted Deliverables are not dependent upon delivery and function of a Deficient Deliverable.

Exhibit No. 1.

13. On or about April 14, 2009, in accordance with Sections 10.2 and 12.7 of the Agreement, Genzyme sent Czarnowski a Notice of Default which requested that Czarnowski cure the deficiencies specifically identified in its March 20th and April 6th

correspondence within ten (10) business days from receipt of such notice.  *See* April 14, 2009 Notice of Default, attached as Exhibit No. 2.

14. On or about April 23, 2009, Czarnowski responded to Genzyme's letter by: (1) challenging Genzyme's assertion that it had breached the Agreement; (2) disingenuously arguing that Genzyme had accepted all of the work at issue by agreeing to provide full payment; (3) claiming, for the first time, that Genzyme owes Czarnowksi approximately $44,000 for a previously undisclosed invoice; and (4) offering to partially cure some of the identified deficiencies only if Genzyme shipped the components to their offices in Chicago and signed an agreement releasing them from any additional claims or liability.

15. On or about May 12, 2009, Genzyme responded with a letter explaining that Czarnowski's offer of a partial cure, contingent on a settlement agreement, was inconsistent with the requirements of Section 10(b) of the Agreement and unacceptable. Moreover, Genzyme's response pointed out that Czarnowski's offer was incomplete because it did not address the more material deficiencies and was not feasible from a cost and time perspective.  At that point, Genzyme had no choice but to hire a third party to timely complete the necessary repairs.

16. Czarnowski has repeatedly refused to take responsibilities for the deficiencies in the Project and the additional costs incurred by Genzyme.  It has breached the explicit terms of the Agreement and caused Genzyme to sustain damages.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

17. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs one through sixteen as if fully stated herein.

18. As set forth above, Czarnowski has breached the terms of the Agreement by, among other things, failing to timely correct, at their expense, the deficiencies specifically identified in Genzyme's April 14, 2009 Notice of Default.

19. As a result of Defendant's breach of contract, Plaintiff has suffered damages.

### COUNT II
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

20  Plaintiff repeats and incorporates by reference the allegations contained in paragraphs one through nineteen as if fully stated herein.

21. Defendant has breached the covenant of good faith and fair dealing implied in the parties' Agreement.

22. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages.

### COUNT III
### UNJUST ENRICHMENT

23. Plaintiff incorporates by reference the allegations contained in paragraphs one through twenty-two as if stated fully herein.

24. By the wrongful acts and conduct described above, Czarnowski has been unjustly enriched to the expense and detriment of Genzyme.

25. As a result, Genzyme has suffered damages for which Czarnowski is legally responsible.

26. Czarnowski is liable under the principle of unjust enrichment.

## COUNT IV
## UNFAIR TRADE PRACTICES

27. The Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs one through twenty-six as if fully stated herein.

28. The acts of Defendant as set forth above including, but not limited to: (1) its baseless refusal to ship the final components for the Project to Genzyme until it had been paid in full; (2) its disingenuous claim that Genzyme's full payment represented "acceptance" of such deliverables; (3) its refusal to address the deficiencies in the Project unless Genzyme signed a settlement agreement releasing it from future claims; (4) its reliance on a previously undisclosed invoice to try to gain leverage in this dispute; and (5) its refusal to fix the deficiencies despite having been paid in full for its work, are unfair and deceptive acts under Mass. Gen. L. ch. 93A, §§ 2, 11.

29. Plaintiff suffered a breach of the Agreement and sustained damages while operating in Massachusetts.

30. Defendant's violations of Mass. Gen. L. ch. 93A were willful.

31. As a result of Defendant's unfair and deceptive acts, Plaintiff has suffered damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor on Counts I-IV of the Complaint and grant the following relief:

1. Under Counts I-III, award damages in an amount to be determined by the jury at trial;

2. Under Count IV, find that Defendant has committed willful violations of Mass. Gen. L. ch. 93A, §§ 2, 11 and award the Plaintiff treble damages and attorneys' fees;

3. Award Plaintiff its reasonable costs, including attorneys' fees and expenses, incurred in connection with this case; and

4. Grant such further relief as the Court considers appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted by the Plaintiff,

**GENZYME CORPORATION**

By its attorney,

/s/ Alexander Furey

---

Alexander Furey, BBO# 634157
Furey & Associates LLC
60 State Street, Suite 700
Boston, Massachusetts 02109
Phone (617) 573-5114

Dated: October 8, 2009